```
                IN THE UNITED STATES DISTRICT COURT
                     MIDDLE DISTRICT OF FLORIDA
                           TAMPA DIVISION


UNITED STATES OF AMERICA,       )
                                )
          Plaintiff,            )
                                )
     vs.                        )   Case No.
                                )
OMAR AMBUILA,                   )   8:21-cr-00103-VMC-AAS-1
                                )
          Defendant.            )
_____)
```

**STATUS CONFERENCE**
**BEFORE THE HONORABLE VIRGINIA M. COVINGTON**

**June 18th, 2024**
**9:39 a.m. to 9:48 a.m.**

(Proceedings recorded by mechanical stenography, transcript produced by computer-assisted transcription.)

**REPORTED BY:**
SUSIE K. CAYLER, FCRR, RPR
Federal Official Court Reporter
(515)778-5008 | reportercayler@gmail.com
801 North Florida Avenue, Tampa, Florida 33602

**APPEARANCES**

**FOR THE PLAINTIFF:**

    JOSEPH PALAZZO
    United States Department of Justice
    1400 New York Avenue, Suite 10302
    Washington, D.C. 20001
    202.445.7910
    joseph.palazzo@usdoj.gov

**FOR THE DEFENDANT:**

    VICTOR MARTINEZ
    Victor D. Martinez, PA
    1408 North Westshore Boulevard, Suite 705
    Tampa, Florida 33607
    813.289.0600
    vmartinez@tampabay.rr.com

1                           ~~~~~
2           (Proceedings began at 9:39 a.m.)
3               THE COURT:  21-103.  Ms. Harris.  This is versus Omar
4    Ambuila -- Joseph Palazzo -- here for the defendant --
5    Mr. Palazzo.  Okay.
6               MR. MARTINEZ:  Good morning, Your Honor.
7               THE COURT:  Yes, Mr. Martinez, good morning.
8               Speedy trial's been waived through July 31st.
9               This is the sixth status.
10              Remind me, Mr. Palazzo, are you from the money
11   laundering section, is that it, or are you --
12              MR. PALAZZO:  I am, indeed.  I got this on recusal.
13              THE COURT:  Okay.  Oh, the local U.S. Attorney's
14   Office recused itself?
15              MR. PALAZZO:  I think the front office at DOJ recused
16   them.
17              Ms. Harris was my partner for a long time.  She, I
18   think, has temporarily left the office and hopefully will be
19   back.
20              THE COURT:  Well, I didn't mean to ask anything too
21   personal.  I'm sorry.  I didn't mean to get into that.
22              I was just wondering why, you know, the asset -- or
23   whatever -- it used to be the money laundering section.  Is it
24   the asset forfeiture money laundering section?
25              MR. PALAZZO:  Recovery.

1             THE COURT:  You would think I would know that name,
2  but it's been 20 years since I've had to deal with that.  I
3  mean, I used to do asset forfeiture.
4             So we're on the July trial term.  Estimated length of
5  trial, four to five days.
6             A lot of discovery, I think that's what you said,
7  Mr. Martinez, is that right?
8             MR. MARTINEZ:  Yes, Your Honor.  As of last week, we
9  thought we had it worked out.
10            THE COURT:  Okay.
11            MR. MARTINEZ:  There is a huge amount of discovery,
12 over 68,000 documents.
13            Mr. Palazzo's been very helpful trying to distill
14 that into the discovery that's most pertinent.
15            I've spent about 10 hours with the defendant.  He's
16 presently in the Citrus County Jail and we thought we had the
17 matter resolved.
18            Additionally, the case is so old that based upon our
19 calculations of the guidelines, he's looking at a time-served
20 sentence, potentially --
21            THE COURT:  Oh, wow.
22            MR. MARTINEZ:  -- if he were to plead now.  So we
23 thought that was the direction he was going to go in.
24            However, when I got on the case, he advised me that
25 his previous lawyer really hadn't gone over any of the

1  discovery with him; so he wanted to do all of that.  Then last
2  week he met with another lawyer from South Florida, George
3  Villa, who represented him initially in the forfeiture matter,
4  and he just wanted to get another opinion.
5              And Mr. Villa called me over the weekend and said he
6  changed his mind and wanted to proceed to trial.
7              I'm going to go see him again this weekend.  If it is
8  true that he wants to go to trial -- all of his witnesses are
9  Columbian, they're not necessarily available, I understand, to
10 come to the United States.
11             I would probably be filing a motion for permission to
12 take foreign depositions, and we'll just have to see.
13             I've told him that he's going to have to waive speedy
14 trial, and he's prepared to waive it through the end of the
15 year.
16             THE COURT:  Well, there are a lot of complications
17 there, Mr. Martinez, aren't there?
18             MR. MARTINEZ:  There are.
19             THE COURT:  The witness issue is a big -- let me just
20 ask Magaly.
21        (Off the record.)
22             THE COURT:  I mean, I've seen it done a variety of
23 ways, a variety of ways, including having them testify live
24 from the American Embassy in Bogota.  That's one way of doing
25 it, as long as it's by the agreement of the parties.  That's

1  one way it's been done.
2         The other way, right, is for you to go down to
3  Columbia, take the person's deposition, video it, and play it.
4  As long as it's by agreement of the parties.
5         If it's not by agreement of the parties, then it's
6  much more of a challenge to figure out how to do that when
7  somebody is in another country.  You have to then go down there
8  and take the deposition.  That's the way it's done -- that's
9  one of the ways it's done.
10         MR. MARTINEZ:  I haven't done it before.  I remember
11  the late Danny Castillo did it a couple of times.
12         THE COURT:  I actually did it a number of times, but
13  not in Columbia.  What I'm telling you is 25 years ago, but I
14  know that that's the way that it can be done if you can't get
15  somebody to come to the United States.
16         MR. MARTINEZ:  Judge, just on another housekeeping
17  matter.
18         Would it be possible to move him from Citrus to
19  Hernando so he's a little bit closer to me, the defendant?
20         THE COURT:  How do you feel about that?  Do you have
21  a problem with that?
22         MR. PALAZZO:  No, Your Honor.  I understand it's an
23  imposition for counsel to go up to Citrus County.
24         THE COURT:  Is Citrus County -- I'm trying to
25  think -- you would think a Tampa native would know all the

1  counties.  But I guess Hernando is just north of Pasco; right?
2  Is that it?
3          MR. MARTINEZ:  Yes.  It's about a 45-minute drive to
4  get to Hernando and an hour-and-a-half roundtrip to Citrus -- I
5  mean, an hour and a half each way.
6          THE COURT:  No, I understand.  Citrus is more towards
7  Ocala, I guess.
8          MR. MARTINEZ:  Near the --
9          THE COURT:  Yeah.  So how would I do that?  Ask the
10 marshals to move him to another facility?
11         MR. MARTINEZ:  That's the only way it's going to
12 happen, Judge.
13         And I don't know that it could happen.  Of course,
14 they'll need to be space, but at least if we could try.
15         THE COURT:  I'm going to ask the marshals if it's
16 possible, as opposed to directing the marshals.
17         I feel uncomfortable telling them what to do when it
18 comes to something like that, but I have no problem asking them
19 if it's possible.  I would rather phrase it that way.
20         MR. MARTINEZ:  That's right.  And there may not be
21 space; so it would be very difficult for them to do it any way.
22         THE COURT:  I'm going to do it through an informal
23 channel.  I'm going to do it --
24         Magaly, let's see if we can reach out to the marshals
25 service informally and ask them, if it's not too much trouble

1  if they could please move the gentleman from Citrus to Hernando
2  so it's easier for his lawyer to communicate with him, to visit
3  him, because it's hard.  This is a CJA-appointed lawyer.
4           We'll ask.  We'll ask.
5           MR. MARTINEZ:  Yes.
6           THE COURT:  If it doesn't work, we'll see.  I don't
7  know if it's my place to tell the marshal service what to do,
8  you know, on that.
9           MR. MARTINEZ:  I understand.
10          THE COURT:  Well, I don't know.
11          I'm a little concerned when you say that under the
12 guidelines he's close to a sentence, that does give me pause
13 there, Mr. Martinez, but it's your client's call, obviously.
14          MR. MARTINEZ:  Right.  I was presuming that when he
15 heard that -- in fact, Mr. Palazzo's been great.  He was not
16 going to even oppose my motion to waive the presentence report
17 so that he could just get back.
18          THE COURT:  Yeah, that's sometimes what we do --
19          MR. MARTINEZ:  Right.
20          THE COURT:  -- particularly on illegal reentry cases,
21 things like that.
22          MR. MARTINEZ:  And in addition to that, because he's
23 illegally in the United States, Mr. Palazzo also agreed that
24 maybe we could get him just to be taken by agents to the
25 airport and put on the plane back to Bogota.

```
 1                    So I had every expectation that he was going to
 2   resolve it by way of plea, and then this curve ball came.
 3                    But I am -- he is going to file a motion to waive
 4   speedy through the rest of the year.  It could be a week from
 5   now that we're back in the plea status, but if not, it's been
 6   waived through the end of the year.  And if we have to go
 7   forward, I'll be filing the motion.
 8               THE COURT:  What should we do?  We're on the July
 9   trial term.  To what do you want it moved, Mr. Martinez?
10               MR. MARTINEZ:  I think if we move it two cycles,
11   Judge.
12                    If it turns out that he changes his mind, we can add
13   it on the docket for change of plea with the magistrate.
14               THE COURT:  So September is okay?  September trial
15   term?
16               MR. MARTINEZ:  I think that would work.
17               THE COURT:  And you can waive speedy trial through
18   September 30th?
19               MR. MARTINEZ:  He's prepared to waive through the
20   rest of the year.
21               THE COURT:  Through December 31st.
22                    Are you okay with that, Mr. Palazzo?
23               MR. PALAZZO:  Yes, as long it meets the interest of
24   justice if he does want to plea and move it up to get him out
25   of here.
```

```
 1              THE COURT:  So I find that ends of justice are served
 2   by continuing this matter to the September trial term.  The
 3   defendant has waived speedy trial through December 31st.
 4              Mr. Palazzo, are you out of Washington, then?
 5              MR. PALAZZO:  Yes, Your Honor.
 6              THE COURT:  Next time it's perfectly fine to appear
 7   by video Zoom.  Please don't -- you don't need to hop on a
 8   plane and come down here.  I appreciate it very much, but it's
 9   not necessary.
10              MR. PALAZZO:  Okay.  Thank you, Your Honor.
11              THE COURT:  Thank you.
12              It's always nice to work with somebody as collegial
13   as you've been on the case.  I really appreciate it, but it's
14   perfectly fine.
15              Next time just ask Magaly and you won't have to fly
16   to come down, unless it's something really important.  Okay?
17              MR. PALAZZO:  Great.  Thank you.
18              THE COURT:  Thank you.
19              MR. MARTINEZ:  Thank you.
20              THE COURT:  We'll have the next status in -- I'm
21   going to keep this on a short leash.  July.  July, whatever
22   day -- July 11th.
23              I won't be here that week, we'll have to move it, but
24   I'm going to leave it, for now, July 11th, but it's going to
25   have to be moved.
```

1        Thank you very much to both of you.
2        (Proceedings adjourned at 9:48 a.m.)

**CERTIFICATE OF REPORTER**

STATE OF FLORIDA

COUNTY OF HILLSBOROUGH

   I, SUSIE K. CAYLER, FCRR, RPR, do hereby certify that I was authorized to and did stenographically report the foregoing proceedings; and that the foregoing pages constitute a true and complete computer-aided transcription of my original stenographic notes to the best of my knowledge, skill, and ability.

   I further certify that I am not a relative, employee, attorney, or counsel of any of the parties, nor am I a relative or employee of any of the parties' attorneys or counsel connected with the action, nor am I financially interested in the action.

   IN WITNESS WHEREOF, I have hereunto set my hand at Tampa, Hillsborough County, Florida, this 9th day of July 2024.

>                     /s/ *Susie K. Cayler*
>                     Susie K. Cayler, FCRR, RPR
>                     Federal Official Court Reporter
>                     United States District Court
>                     Middle District of Florida